J-S17005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARK STRONG-NEMBHARD, | |
| Appellant | No. 3486 EDA 2015 |

Appeal from the PCRA Order of November 5, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006331-2012, CP-51-CR-0006332-2012, CP-51-CR-0006333-2012 and CP-51-CR-0006361-2012

BEFORE:  OLSON, STABILE AND MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 17, 2017**

Appellant, Mark Strong-Nembhard, appeals from the order entered on November 5, 2015, dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  Counsel has also filed with this Court a petition to withdraw from further representation and a no-merit letter pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).  Upon review, we grant counsel's petition to withdraw and affirm the dismissal of Appellant's PCRA petition.

The PCRA court summarized the facts and procedural history of this case as follows:

The incidents in this case took place from March 24, 2012 through May 8, 2012.  On September 29, 2011, a final [Protection From Abuse Act (PFA)] order for [Complainant]

became effective through September 29, 2014 against, [Appellant]. The first harassment took place on March 24, 2012, at 770 City Avenue around 7:44 a.m. when Complainant was driving to work and in her rearview mirror observed Appellant following her in his vehicle[.] After pulling into work[,] Complainant got out of her car and immediately went inside. Appellant then proceeded to call Complainant multiple times. When Complainant would not answer her [cellular telephone,] Appellant pulled up to the drive-thru window at her work and looked at her for approximately four (4) minutes. Complainant became scared and immediately proceeded to call the police, at which time Appellant fled. When police arrived to the scene, [an officer] made a report of the incident. While [the officer prepared] the report[,] Appellant called Complainant twenty (20) times. Each time [] Appellant called [] Complainant, [the officer answered the telephone] and made Appellant aware he still had a valid outstanding PFA which prohibited him from calling Complainant.

The same day, [] Complainant went down to the Southwest Detective Division and gave a statement. Complainant later arrived [at her home on] Greenway Avenue and learned from her 13-year-old daughter that [] Appellant had come over. According to her daughter, Appellant had informed her he was allowed to be in the house. Appellant claimed that Complainant said he could come over and get some of his stuff. [Complainant's daughter, and a witness herein], allowed Appellant into the home. []Appellant went to the basement and then proceeded upstairs. []Complainant arrived home and state[d that she encountered a strong odor of bleach] as she walked up the steps to her bedroom[.] Complainant went into her bedroom and noticed bleach stains on her bed, all over her room, and her clothing. Complainant then noticed items missing from the room including a ring, watch, necklace, blue tooth charger, and a 1919 bottle of liquor. []Complainant called Appellant[,] questioning him as to why he did it. []Appellant proceeded to tell her he saw her pretty blanket and got upset knowing another man was going to be in bed with her. []Complainant then called the police and reported the incident. Further, on April 2, 2012, [] Complainant received a [tele]phone call from Appellant's friend[,] who stated that Appellant had given him some of the [missing] items.

On April 8, 2012, at 4:31 a.m., [C]omplainant and her daughter were sleeping in their respective bedrooms [at the Greenway Avenue residence] in the city of Philadelphia when Appellant broke into the home through the back door. Appellant then went to the bedroom of Complainant where she was awoken by Appellant and stabbed multiple times. []Complainant's daughter came to the aid of her mother and was also stabbed in the back by Appellant. Both Complainant and daughter were interviewed and taken to the hospital for treatment. Appellant was arrested and charged on May 8, 2012.

On February 27, 2013, Appellant attended his court disposition hearing[.] [Appellant's counsel] stated in open court that when Appellant was paroled he would be deported back to Jamaica. The [trial c]ourt . . . then asked [Appellant] if he wished to plead guilty to the four separate matters rather then proceed to trial, [to] which Appellant replied "Yes sir." At [that] point[,] the Commonwealth recited all the facts pertaining to the case. Appellant did not disagree. Before pleading, Appellant's [a]ttorney had the [c]ourt ask, "Do you understand that this could affect your immigration status, do you understand that?" In reply, Appellant stated, "I'm know I'm headed back to Jamaica, I know that." Further[,] the [c]ourt ask[ed], "so you've already accepted that?" In reply Appellant state[d], "I know." []Appellant then proceeded to plead guilty on all counts. At the end of the hearing Appellant's [a]ttorney, in front of the [trial c]ourt, stated to Appellant, "If you aren't deported before you go on probation, you'll be supervised by the Domestic Violence Unit, do you understand that?" []Appellant replied "yes." At the conclusion of the hearing[, Appellant confirmed that he understood his right to file a motion to reconsider his sentence and his right to file an appeal within the respective designated time periods.]

PCRA Court Opinion, 7/12/2016, at 1-3 (record citations omitted).

Following Appellant's guilty plea to aggravated assault, burglary, contempt for violation of PFA order, and stalking, the trial court sentenced Appellant to serve five to ten years' incarceration, followed by ten years' reporting probation. No direct appeal followed. On October 18, 2013,

Appellant timely filed a petition under the PCRA. The PCRA court appointed counsel, who filed an amended petition on February 9, 2015. The Commonwealth filed its answer to Appellant's petition on June 3, 2015. On August 20, 2015, the PCRA court issued notice of its intent to dismiss Appellant's petition without a hearing. Thereafter, the court dismissed Appellant's petition on November 5, 2015. After Appellant filed a timely notice of appeal on November 17, 2015, the court, on November 30, 2015, ordered Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). Appellant filed his concise statement on December 18, 2015. The PCRA court issued its Rule 1925(a) opinion on July 12, 2016.

After PCRA counsel determined there were no meritorious issues for appellate review, counsel filed with this Court both a motion to withdraw as counsel and an accompanying "no merit" brief pursuant to *Turner*/*Finley*. *See Commonwealth v. Doty*, 48 A.3d 451, 454 (Pa. Super. 2012). Appellant has not responded.

Prior to reviewing the merits of this appeal, we first decide whether counsel has fulfilled the procedural requirements for withdrawing as counsel. *Doty*, 48 A.3d at 454. As we have explained:

> Counsel petitioning to withdraw from PCRA representation must proceed ... under *Turner, supra* and *Finley, supra* and must review the case zealously. *Turner/Finley* counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing

> the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.
>
> Counsel must also send to the petitioner: (1) a copy of the "no merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.
>
> \*        \*        \*
>
> Where counsel submits a petition and no-merit letter that ... satisfy the technical demands of ***Turner/Finley***, the court—trial court or this Court—must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

***Id.***

Here, we find all of the above-mentioned procedural requirements have been satisfied. Counsel filed a no-merit brief and petition to withdraw as counsel with this Court. In addition, counsel forwarded a letter to Appellant that enclosed counsel's ***Turner***/***Finley*** brief filed with this Court, as well as counsel's motion to withdraw. Counsel's letter also advised Appellant of his right to retain new counsel or proceed *pro se* in this appeal. Hence, we conclude that the ***Turner***/***Finley*** requirements have been met. We now undertake our own review of the case to consider whether the PCRA court erred in dismissing Appellant's PCRA petition and to determine whether the record supports any other issues of potential merit.

Counsel's ***Turner***/***Finley*** brief reviews the following claims, which were included within Appellant's concise statement, filed on December 18, 2015. We have paraphrased the issues to facilitate discussion.

- 5 -

Whether Appellant's guilty pleas are invalid since they were not tendered in a knowing, intelligent, and voluntary manner? Whether plea counsel was ineffective in failing to insure that Appellant entered knowing, intelligent, and voluntary guilty pleas?

Whether there was a factual basis for Appellant's guilty pleas?

Whether the trial court erred in accepting Appellant's guilty plea as to burglary where Appellant was a resident of the Greenway Avenue residence in which the attack occurred and, thus, the evidence was insufficient to show that Appellant committed a burglary?

Whether Appellant's guilty pleas were invalid since he was unaware that his pleas made him subject to deportation?

Whether the PCRA court erred in dismissing Appellant's petition without an evidentiary hearing?

*See* Appellant's Brief at 7-8 and attachment A-1.

Our standard of review of a PCRA court's dismissal of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the record evidence and free of legal error. ***Commonwealth v. Whitehawk***, 146 A.3d 266, 269 (Pa. Super. 2016).

Appellant's first four claims attack the validity of his guilty pleas. Hence, we shall address these issues in the same general discussion. Before we examine the substance of Appellant's challenges, we note that, as freestanding claims, Appellant's issues are subject to waiver under the PCRA because he failed to raise them on direct appeal. ***See*** 42 Pa.C.S.A. § 9543(a)(3) (eligibility for relief under the PCRA requires petitioner to plead and prove by a preponderance of the evidence that an allegation of error has

not been previously litigated or waived); *see also* 42 Pa.C.S.A. § 9544(b) ("For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."). Appellant has, however, included a claim that plea counsel was ineffective in failing to insure that Appellant entered knowing, intelligent, and voluntary guilty pleas. Such a claim could not have been raised on direct appeal and, thus, is not subject to waiver. Accordingly, for purposes of review, we shall assume that each of Appellant's issues asserts a claim alleging counsel's ineffectiveness.

To prevail on a claim alleging ineffective assistance of counsel, a "petitioner must plead and prove (1) the legal claim underlying the ineffectiveness claim has arguable merit; (2) counsel's action or inaction lacked any reasonable basis designed to effectuate petitioner's interest; and (3) counsel's action or inaction resulted in prejudice to petitioner." *Commonwealth v. Mason*, 130 A.3d 601, 618 (Pa. 2015) (citation omitted).

The following principles govern our assessment of the merit of a challenge to a guilty plea.

> Basic tenets of guilty plea proceedings include the following. "The law does not require that appellant be pleased with the outcome of his decision to enter a plea of guilty: 'All that is required is that [appellant's] decision to plead guilty be knowingly, voluntarily and intelligently made.'" *Commonwealth*

*v. Yager*, 685 A.2d 1000, 1004 (Pa. Super. 1996) (*en banc*), *appeal denied*, 701 A.2d 577 (Pa. 1997) (quotation omitted).

Once a defendant has entered a plea of guilty, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him. Therefore, where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established.... Determining whether a defendant understood the connotations of his plea and its consequences requires an examination of the totality of the circumstances surrounding the plea.

[I]n order to determine the voluntariness of the plea and whether the defendant acted knowingly and intelligently, the trial court must, at a minimum, inquire into the following six areas:

(1) Does the defendant understand the nature of the charges to which he is pleading guilty?

(2) Is there a factual basis for the plea?

(3) Does the defendant understand that he has a right to trial by jury?

(4) Does the defendant understand that he is presumed innocent until he is found guilty?

(5) Is the defendant aware of the permissible ranges of sentences and/or fines for the offenses charged?

(6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

*Commonwealth v. McCauley*, 797 A.2d 920, 922 (Pa. Super. 2001) (citation omitted). This examination may be conducted by defense counsel or the attorney for the Commonwealth, as permitted by the judge. Comment, Pa.R.Crim.P. 590. Moreover, the examination does not have to be solely oral. Nothing precludes the use of a written colloquy that is read,

completed, and signed by the defendant, made part of the record, and supplemented by some on-the-record oral examination. *Id.*

*Commonwealth v. Moser*, 921 A.2d 526, 528-529 (Pa. Super. 2007). "A criminal defendant who elects to plead guilty has a duty to answer questions truthfully." *Commonwealth v. Turetsky*, 925 A.2d 876, 881 (Pa. Super. 2007).

It is well settled that the right to effective counsel extends to the plea process. In prior cases, we have stated:

> A criminal defendant has the right to effective counsel during a plea process as well as during a trial. Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

*Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa. Super. 2002).

Based upon our review of the transcript from the plea hearing, we are satisfied that Appellant entered knowing, intelligent, and voluntary guilty pleas in this case. The trial court conducted a thorough, on-the-record oral colloquy during which it confirmed that Appellant understood the charges that confronted him, the sentences he faced, and the rights he intended to surrender by entering his pleas. The court also confirmed that Appellant reviewed and understood the written plea agreements that he executed. Appellant agreed with the Commonwealth's recitation of the facts, which the

court found to be sufficient to support the charges in this case. Appellant also stated that he read, wrote, and understood English, that he was not under the influence of drugs or alcohol, and that he was not currently under treatment for mental illness. Both the trial court and plea counsel informed Appellant that his guilty pleas could adversely influence his immigration status and Appellant acknowledged that his pleas could render him subject to deportation. Under the totality of circumstances, it is clear that Appellant entered valid guilty pleas.

We also agree with counsel that there is no merit in Appellant's claim that he did not commit a burglary because he was a resident of the Greenway Avenue residence. At the time Appellant committed the offenses herein, the Crimes Code defined burglary in the following manner.

**18 Pa.C.S.A. § 3502(a). Burglary**

**Offense defined. –** A person is guilty of burglary if he enters a building or occupied structure . . . with the intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.

18 Pa.C.S.A. § 3502. The victim's Greenway Avenue residence was not open to the public and Appellant was not licensed or privileged to enter the structure pursuant to the terms of a PFA order. At the plea hearing, the Commonwealth introduced the PFA order into the record and Appellant agreed with the Commonwealth's factual recitation, which referenced the order and the provision excluding Appellant from the victim's residence. Thus, this claim merits no relief.

Lastly, we address Appellant's claim that that the PCRA court erred in dismissing his petition without an evidentiary hearing. Our Supreme Court recently observed:

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied "'there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings.'" **Commonwealth v. Roney**, 79 A.3d 595, 604 (Pa. 2013)[.] "To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." **Roney**, 79 A.3d at 604–05, *quoting* **Commonwealth v. D'Amato**, 856 A.2d 806, 820 (Pa. 2004).

**Commonwealth v. Hannibal**, 2016 WL 6873041, *5 (Pa. 2016) (parallel citations omitted). After careful review of the record, we are unable to identify a genuine issue of fact that would entitle Appellant to relief. For this reason, we cannot conclude that the PCRA court abused its discretion in dismissing Appellant's petition without a hearing.

Upon independent review of the record, we agree with counsel that no issues of arguable merit appear in the certified record. Hence, we shall affirm the order denying collateral relief and grant counsel's petition to withdraw.

Order affirmed. Counsel's petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/17/2017